IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
a Pennsylvania corporation, as subrogee of Omega Plantations Partnership     PLAINTIFF

v.     CIVIL ACTION NO. 2:11-CV-00260-GHD-JMV

DEERE & COMPANY, a Delaware corporation     DEFENDANT

MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Presently before the Court is Defendant Deere & Company's motion to dismiss for failure to state a claim, or in the alternative, for summary judgment [8] brought pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. Upon due consideration, the Court finds the motion should be granted in part and denied in part for the reasons set forth herein.

*A. Factual and Procedural Background*

Plaintiff Indemnity Insurance Company of North America ("Plaintiff") files this diversity action against Defendant Deere & Company ("Defendant"). Mississippi law governs. Plaintiff alleges the following facts: Omega Plantations Partnership ("Omega") is a Mississippi partnership with agricultural operations in several locations, including Clarksdale, Mississippi. Plaintiff insured Omega's business property and agricultural equipment, including three cotton pickers manufactured by the Defendant and bearing the serial numbers N09996X020427, N09996X020485, and N09996X020428. In the fall of 2009, the three cotton pickers at issue ignited and were destroyed completely by fire: N09996X020427 on October 22, 2009; N09996X020485 on November 2, 2009; and N09996X020428 on November 4, 2009. During

1

this time, another cotton picker also caught fire, but that fire was extinguished without significant damage to the cotton picker. Prior to the fires, the cotton pickers were used in an appropriate, natural, and foreseeable manner and were maintained and cleaned properly according to Defendant's recommendations. All the fires originated in the same area of each cotton picker: an obscured region between the lower rear of the engine and an adjacent frame cross member. The areas in which the fires originated were not easily accessible for cleaning, as some disassembly of components was required in order to expose the area in which the fires originated. The exhaust of the cotton picker can reach temperatures as high as 900 degrees Fahrenheit and thus is a competent ignition source for cotton lint and debris, which easily become trapped in the obscure region.

Omega filed a claim with Plaintiff, its insurer, to obtain indemnity for the loss of the three destroyed cotton pickers. Plaintiff paid Omega the total sum of $514,000.00 for losses resulting from the fires: specifically, $169,000.00 for N09996X020427; $176,000.00 for N09996X020485; and $169,000.00 for N09996X020428. Plaintiff then filed this suit, as subrogee, to recover from Defendant the amount paid to Omega. Plaintiff asserts that the suit is properly brought in its own name, as Omega assigned its rights of recovery against third parties to Plaintiff.

Plaintiff alleges that based on Defendant's earlier models of the cotton picker, as well as other competitors' cotton pickers designs, it was commercially feasible and practicable to design the engine compartment of the cotton pickers to reduce the intake of cotton and/or debris. Plaintiff avers that the fires that destroyed the subject cotton pickers were directly and proximately caused by the design defects in the engine compartment of the cotton pickers and/or by Defendant's failure to provide adequate warnings and instructions regarding cleaning.

Plaintiff seeks damages for alleged breaches of the implied warranties of merchantability and fitness for a particular purpose.

In lieu of filing an answer to Plaintiff's complaint, Defendant filed a motion to dismiss Plaintiff's claims for failure to state a claim, or in the alternative, for summary judgment [8]. Plaintiff has submitted a response, and Defendant has submitted a reply. The matter is now ripe for review.

*B. Legal Standards*

Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "are viewed with disfavor and are rarely granted." *Kocurek v. Cuna Mut. Ins. Soc'y*, 459 F. App'x 371, 373 (5th Cir. 2012) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). In reviewing a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). Of course, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The court must not evaluate the likelihood of the claim's success, but instead ascertain whether the plaintiff has stated a legally cognizable claim that is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Because in considering the Defendant's motion the Court has reviewed the parties' attached matters outside the pleadings which the Court shall not exclude,

3

the motion shall be considered a motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548. The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

### C. Discussion

Plaintiff alleges that Defendant breached the implied warranties of merchantability and fitness for a particular purpose.[1] For goods to be merchantable, they must, among other things,

---

[1] The Court notes that the Mississippi Products Liability Act does not bar breach of implied warranty claims. *See McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 940 (Miss. 2011) (citing *Bennett v. Madakasira*, 821 So. 2d 794, 808 (Miss. 2002), citing MISS. CODE ANN. §§ 11–1–63 [ (Rev. 2002) ], 75–2–715 [ (Rev. 2002) ] ), *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116 (Miss. 2010)).

"[p]ass without objection in the trade under the contract description" and be "fit for the ordinary purposes for which such goods are used." MISS. CODE ANN. § 75-2-314(a) & (c). Mississippi law defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." MISS CODE. ANN. § 75–2–105. Privity is not required on a cause of action for damages brought on account of breach of warranty. *Hargett v. Midas Int'l Corp.*, 508 So. 2d 663, 665 (Miss. 1987) (citing MISS. CODE ANN. § 11-7-20). Defendant argues that Plaintiff's implied warranty claims must be dismissed for the following reasons: (1) any implied warranties were properly disclaimed; (2) Defendant, while a manufacturer of cotton pickers and other agricultural equipment, was not a "merchant" with respect to the cotton pickers at issue; (3) all implied warranties had been satisfied by the end of the fourth harvest season; (4) Defendant was not given an opportunity to cure the alleged defects; and (5) the subject cotton pickers were used for their ordinary purpose, and thus the claim for breach of implied warranty of fitness for a particular purpose fails.

### 1. *Disclaimer of Implied Warranties*

Defendant contends that it properly disclaimed any implied warranties in its customer purchase order form for the John Deere cotton pickers. Defendant maintains that the disclaimer language was boldface and in all capital letters, and the form itself was executed by an Omega representative. Plaintiff argues that Defendant could not disclaim the implied warranties under Mississippi law at that time. Defendant has failed to challenge this argument in its reply. The Court finds that Plaintiff's argument is correct as a matter of law. The current version of the relevant Code section provides:

> Except as otherwise provided in Sections 75-2-314, 75-2-315, 75-2-315.1 and 75-2-719, there shall be no limitation of remedies or disclaimer of liability as to any implied warranty of

> merchantability or fitness for a particular purpose in a sale <u>to a consumer</u>, as defined in Section 75-1-201(b)(11), <u>of consumer goods</u>, as defined in Section 75-9-102(a)(23). The provisions of this section may not be waived or varied by agreement.

MISS. CODE ANN. § 11-7-18 (emphasis added). However, at the time of the sale of the subject cotton pickers in 2006, Mississippi law prohibited <u>any</u> limitation of remedies or disclaimer of liability as to any implied warranty of merchantability or fitness for a particular purpose. *See Fedders Corp. v. Boatright*, 493 So. 2d 301 (Miss. 1986). Any attempt by Defendant to disclaim implied warranties was not valid under Mississippi law at the time of sale. Thus, Defendant's motion is denied on this ground.

### 2. *Breach of Implied Warranty of Merchantability Claim*

Plaintiff's first theory of recovery is breach of the implied warranty of merchantability. "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." MISS. CODE ANN. § 75-2-314(1). "The implied warranty of merchantability is not intended to guarantee that the goods be the best or of the highest quality—the standard is measured by the generally acceptable quality under the description in the contract." *Beck Enters., Inc. v. Hester*, 512 So. 2d 672, 676 (Miss. 1987) (internal citation omitted). Where a product conforms to the quality of other similar products in the market, it will normally be merchantable. A plaintiff must prove five elements to recover under § 75–2–314: "(1) That a 'merchant' sold 'goods,' and he was a merchant with respect to 'goods of the kind' involved in the transaction, (2) which were not merchantable at the time of the sale, and (3) injuries and damages to the plaintiff or his property, (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Vince v. Broome*, 443 So. 2d 23, 26 (Miss. 1983); *see also CEF Enters., Inc. v. Betts*, 838 So. 2d 999, 1003 ¶ 15 (Miss. Ct. App. 2003) ("To recover for breach of an implied warranty, the plaintiff

must establish: (1) the defendant was a merchant which sold goods of the kind involved in the transaction, (2) that the defect was present when the product left the defendant's control, and (3) the injuries to the plaintiff were caused proximately by the defective nature of the goods.").

Plaintiff alleges that the cotton pickers at issue ignited and were completely destroyed by fire, thus causing damage to Omega's property. Plaintiff further alleges that Defendant's breach of this warranty directly and proximately caused the destruction of the three cotton pickers and directly and proximately caused Plaintiff to incur damages in the amount of $514,000.00 for which Defendant is liable to Plaintiff. Defendant contends that Plaintiff's claim for breach of the implied warranty of merchantability fails because (1) Defendant was not a merchant with respect to the sale of the cotton pickers, (2) the cotton pickers were merchantable at the time of sale, and (3) no notice of the alleged defect or opportunity to cure was given to Defendant.

### (1) <u>Whether Defendant Was a Merchant With Respect to the Cotton Pickers</u>

To sustain a claim for breach of the implied warranty of merchantability, first, Plaintiff must establish that Defendant was a merchant with respect to the cotton pickers at issue.

> "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

MISS. CODE ANN. § 75-2-104(1). Under Mississippi law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." MISS. CODE ANN. § 75–2–314(1); *see Woods v. Ramsey*, 199 F.3d 437, at *7 (5th Cir. 1999) (citing *Hargett*, 508 So. 2d at 664); *Vince*, 443 So. 2d at 27. Courts make this

determination based on the facts of the particular case, and the ultimate question is a mixed question of law and fact. *Vince*, 443 So. 2d at 28.

Defendant argues it was not a merchant, but was instead a manufacturer of the subject cotton pickers. However, manufacturers can be merchants under Mississippi law. In *Fedders Corp. v. Boatright*, the Mississippi Supreme Court held that a heat pump manufacturer was liable for breach of an implied warranty of merchantability, when a consumer purchased the subject heat pump from the manufacturer's authorized dealer. 493 So. 2d at 307; *see also Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 708 (5th Cir. 2002) (discussing *Fedders*). In a case decided approximately one year after *Fedders*, the Mississippi Supreme Court held that the buyer of a used motor home could bring a breach of implied warranty of merchantability claim against the manufacturer of the motor home, which sold or contracted to sell motor homes, thus fitting the definition of "seller" in the Mississippi Code. *See Hargett*, 508 So. 2d at 665. The court based its ruling in part on the following reasoning of the Texas Supreme Court:

> [A] manufacturer may also be a seller. The [Texas] Code does not limit its definition of seller to the immediate seller of a product. Instead, the Code defines a seller as "a person who sells or contracts to sell goods."

*Id.* (quoting *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 80 (Tex. 1977) (internal citation omitted)). The Mississippi Supreme Court has also explained with respect to automobiles:

> [T]he retailers sales contract accompanied by the manufacturer's warranty, are so closely linked in both time of delivery and subject matter, that they blend[ ] into a single unit at the time of sale. We are fortified in this statement by the general observance that sales are usually made, not only upon the make and model of the automobile, but also upon the assurance of the manufacturer, through its warranty, that the vehicle will conform to the standards of merchantability.

8

*Volkswagen of Am., Inc. v. Novak*, 418 So. 2d 801, 804 (Miss. 1982). In a case similar to this, a plaintiff in the business of dirt moving, leveling, and building catfish ponds sued, *inter alios*, Deere & Company (the same Defendant in the case *sub judice*) for breach of the implied warranties of merchantability and fitness for a particular purpose when the tractors he had purchased began experiencing problems. *See Duett Landforming, Inc. v. Belzoni Tractor Co.*, 34 So. 3d 603, 605 ¶¶ 1–4 (Miss. Ct. App. 2010). The Mississippi Court of Appeals held that Deere & Company was a merchant who sold tractors. *See id.* at 611 ¶ 21.

The Court finds that based upon the foregoing, Defendant Deere & Company was both a manufacturer and a merchant with respect to the cotton pickers at issue. Thus, Defendant's motion is denied on this ground.

### (2) Whether the Cotton Pickers Were Not Merchantable at Time of Sale

Plaintiff must next establish that the cotton pickers at issue were not merchantable at the time of sale. Plaintiff alleges that the changes in design, resulting defects, and failure to provide warnings or adequate instruction rendered the cotton pickers unmerchantable. Specifically, Plaintiff alleges that the design of the cotton pickers materially increased the risk of intake and accumulation of combustible lint and debris in the engine compartment, as well as the resulting risk of fire. Defendant argues that Plaintiff does not have a viable claim, because from the date Omega purchased the subject cotton pickers in August 2006 until the fires occurred in the fall of 2010, the cotton pickers were used to harvest cotton and had encountered no problems; thus, Defendant maintains that no defect was present at the time of purchase and this element of the claim is not satisfied. Defendant cites in support of its argument *Ford Motor Co. v. Fairley*, 398 So. 2d 216 (Miss. 1981), in which the Mississippi Supreme Court determined that no breach of implied warranty of merchantability existed when a car had been operated for 26,649 miles over

two years before the problems started. This Court notes that a cotton picker, which is used only during the cotton harvest season, would not encounter the same persistent use as an automobile, and thus would not have as much opportunity to manifest problems. However, the Court cannot at this stage of the litigation determine from the evidence before it at what point, if at any point, a defect was present in the cotton pickers at issue. Accordingly, the Court finds that a genuine dispute of material fact exists with respect to whether the cotton pickers were merchantable at the time of sale. Thus, Defendant's motion is denied on this ground.

### (3) Whether Notice of the Injury Was Given to Defendant

Defendant argues that Plaintiff's breach of implied warranty of merchantability claim is not properly before the Court, because Plaintiff fails to allege that a reasonable opportunity to cure was given to Defendant, and Defendant has no record of Omega or Plaintiff giving it an opportunity to cure the alleged defect. Plaintiff argues in response that Omega did not discover the defect—accumulation of debris in a concealed region of the cotton picker—until the fourth cotton picker caught on fire and was observed by someone outside the cab of the picker which allowed the location of the fire to be discovered and for the fire to be extinguished. Thus, Plaintiff contends it had no opportunity to give notice to Defendant of the defect and any opportunity to cure the defect until all three subject cotton pickers were already destroyed. At that time, Plaintiff maintains that Defendant sent an investigator to examine all four of the cotton pickers that were involved in the fires. Plaintiff contends that discovery in this case would reveal that notice was provided to Defendant of the defect. Plaintiff argues that the opportunity for cure required by Mississippi law is governed by a reasonableness standard and "[w]hat may be a reasonable opportunity in the context of an underperforming but otherwise intact product may not be reasonable in the case of product destroyed by itself before any defect could be

identified." Finally, Plaintiff argues that if the parties lacked privity of contract, Plaintiff need not have provided Defendant with the opportunity to cure.

Under Mississippi law, a buyer who accepts tender of goods "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." MISS. CODE ANN. § 75–2–607(3)(a). Notice need not entail "a specific claim for damages or an assertion of legal rights." *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 368 (5th Cir. 2002) (quoting *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir. 1976) (citations omitted)). "[W]hether the notice requirement has been complied with is a question which is particularly within the province of the jury." *Carter Equip. Co. v. John Deere Indus. Equip. Co.*, 681 F.2d 386, 396 (5th Cir. 1982) (quoting *E. Air Lines, Inc.*, 532 F.2d at 973). Even if there was breach of the implied warranty of merchantability, the seller has a right to attempt cure of the defect. *Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 834 (Miss. 2009) (citing *Fitzner Pontiac-Buick-Cadillac, Inc., v. Smith*, 523 So. 2d 324, 328 (Miss. 1988)). Mississippi law provides that the seller's right to attempt cure of an alleged defect is a "reasonable requisite" of a buyer's "right of recovery." *Id.*

The Court finds that a genuine dispute of material fact exists as to whether Plaintiff provided Defendant with the required notice and opportunity to cure the alleged defect. Accordingly, Defendant's motion is denied on this ground.

For all the foregoing reasons, Plaintiff's claim for breach of the implied warranty of merchantability survives Defendant's motion.

### *3. Breach of Implied Warranty of Fitness for a Particular Purpose Claim*

Second, Plaintiff asserts that it is entitled to recovery under a theory of breach of the implied warranty of fitness for a particular purpose. "[W]here the seller at the time of

11

contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose." MISS. CODE ANN. § 75-2-315. To present a cause of action for breach of this implied warranty, a plaintiff must show the following:

> (1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required;
>
> (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods; and
>
> (3) the goods were unfit for the particular purpose.

*MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979) *(citing Garner v. S&S Livestock Dealers, Inc.*, 248 So. 2d 783, 785 (Miss. 1971).

Defendant argues that the claim cannot be brought against Defendant if Defendant is not a merchant. The Court has already determined that Defendant was a merchant with respect to the cotton pickers at issue. However, the Court instructs the Defendant that a seller may be subject to suit on the implied warranty of fitness for a particular purpose even if the seller is not a merchant. *See McNabb v. L.T. Land & Gravel, LLC*, 77 So. 3d 1140, 1145 (¶ 20) (Miss. Ct. App. 2012) (citing MISS. CODE ANN. § 73-2-315; *Lacy v. Morrison*, 906 So. 2d 126, 131 (¶14) (Miss. Ct. App. 2004)). Defendant's motion is denied on this ground.

Defendant also argues that Omega purchased the subject cotton pickers for their ordinary use—to pick cotton—and thus that Plaintiff's claim fails because there was no implied warranty of fitness for a particular purpose. The Court finds that Defendant's argument is well taken. Under Mississippi law, a plaintiff does not have a viable claim for breach of the implied warranty of fitness for a particular purpose when the product at issue was purchased for its ordinary use. *See* Official Comment to UCC § 2-315 ("a 'particular purpose' differs from the

ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question"); *Casanova*, 999 So. 2d at 835; *Fairley*, 398 So. 2d at 219. Because Omega undisputedly purchased the subject cotton pickers for their ordinary use, to pick cotton, Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose must be dismissed as a matter of law. Thus, Defendant's motion is granted as to that claim.

### D. Conclusion

In sum, the Court finds that Defendant's motion to dismiss for failure to state a claim, or in the alternative, for summary judgment [8] shall be GRANTED with respect to Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose, and DENIED with respect to Plaintiff's claim for breach of the implied warranty of merchantability.

A separate order in accordance with this opinion shall issue this day.

THIS, the 24th of September, 2012.

_____
SENIOR JUDGE